## Caramanico v. Ciccantelli et al.

*Frank J. Strassner, Jr.,* for plaintiff.

*G. G. D'Angelo,* for defendants.

GORDON, JR., P. J., September 5, 1950.—This is a bill in equity for the declaration and enforcement of an alleged exclusive easement of a right of way for

ingress and egress to plaintiff's property over a 10-by-30 foot section of a 12½ foot wide driveway located on an adjacent property now owned by defendants, Ciccantelli, and in which all defendants also claim to have a like right of way common with plaintiff. The proceeding is before us on bill, answer, and proofs, and as there is no factual dispute between the parties, the case has been submitted for our decision on a stipulated set of facts, which constitute the entire stenographic record of the hearing. The stipulation is quite lengthy, and contains many details which are not necessary to a discussion and determination of the rights of the parties. It will be sufficient, therefore, to refer here to the salient and controlling facts disclosed by the record, and, in lieu of formal findings of fact, to incorporate the entire stipulation in this adjudication by reference to the stenographic notes.

Along the east side of North Sixty-seventh Street, beginning at a point 90 feet, more or less, above Haverford Avenue, is a row of seven dwellings, numbered 615 to 627, which are owned by various defendants.[1] All the lots on which the dwellings are erected, except the southernmost one, number 615, have a uniform depth of 60 feet and a width of approximately 16 feet. No. 615 is owned by defendants Mario and Anna Ciccantelli, and is 28 feet 9⅞ inches wide. The extra width

---

[1] This plan (not drawn to scale) shows the relative positions of the various properties referred to in this adjudication:

of this lot is due to the fact that, running eastwardly across its southern side to the rear line of the property is a 12 and ½ feet wide concrete driveway. From this driveway, another 17-foot wide driveway, also paved with concrete, runs northward along the rears of the properties of the other defendants. The only access to a public highway which defendants have from the rears of their properties is over these two driveways, which is secured to them in their deeds as an easement in common for use as "passageways and watercourses and automobile driveways". This easement in the Ciccantelli driveway runs, in substantially the same language, through all the mesne conveyances of all defendants' properties from Paul V. Chandler, the original owner of them, to defendants. The first of those conveyances, dated June 9, 1930, was of all the properties as a single individual tract to Cornelia A. Stroud, and contained the provision that it was made "together with the free and common use, right, liberty and privilege of the aforesaid driveways (i. e., the one on what is now the Ciccantelli property, and another along the northern border of the tract) as and for passageways and watercourses at all times hereafter forever". Thereafter, in the next 14 years, the land was conveyed as a unit seven times, each conveyance reciting the two driveways and their attempted dedication to a common use as passageways and watercourses, until the land finally became vested in Esther Kolb on April 12, 1944. In the latter part of this period, the tract was divided into seven lots, and developed by the erection on them of a row of a like number of dwellings, which were sold from time to time, between May 13, 1944, and June 9, 1945, to various purchasers, title to the different properties finally vesting in present defendants. In the development of this land, the northern driveway, which is not here involved, was abandoned, and the 17-foot wide driveway, already mentioned,

was laid out along the rears of all the dwellings and connected with the Ciccantelli driveway, which was then reduced from 20 to 12 and ½ feet. All of the deeds to the individual properties contain a grant to the purchasers, in substantially the same language, of "the free and common use, right, liberty and privilege of the aforementioned driveways as and for passageways and watercourses and automobile driveways at all times hereafter forever in common with the owners, tenants and occupiers of the other lots bordering thereon and entitled to the use thereof".[2]

---

[2] The following diagram shows the various conveyances, with their dates, beginning with Chandler to Stroud, through which defendants acquired their titles:

Chandler et ux.
Stroud—6/9/30
Holl—9/17/36
Di Falco—9/23/40
Ramsdale—9/23/40
Di Falco—4/26/43
Penn-Co. Realty Co.—7/15/43
Di Falco—2/23/44
Kolb—4/12/44

| 615 N. 67th St. | 617 N. 67th St. | 619 N. 67th St. |
|---|---|---|
| Cella et ux. 6/10/44 | Castaldi 1/24/45 | Coletti et ux. 4/25/45 (Def.) |
| Ciccantelli et ux. 9/13/49 (Def.) | Green 4/5/49 | |
| | D'Alessandro et ux. 10/4/49 (Def.) | |

| 621 N. 67th St. | 623 N. 67th St. | 625 N. 67th St. | 627 N. 67th St. |
|---|---|---|---|
| Boyle et ux. 4/24/45 | Finio et ux. 6/9/45 (Def.) | Mandes 12/11/44 | Turchi et ux. 5/13/44 (Def.) |
| Ansell et ux. 4/25/45 | | Davies 12/28/45 | |
| Cella et ux. 5/31/46 | | Gambetta et ux. 8/4/49 (Def.) | |
| Arcinese et ux. 10/17/49 (Def.) | | | |

Abutting upon the Ciccantelli lot and driveway on the south, and of the same depth, is a small plot of ground in the form of a right triangle, which, together with the land into which defendants' lots were subsequently divided, constituted an entire tract that was bought by Chandler at sheriff's sale in 1928. At that time the Ciccantelli driveway, then 20 feet wide, was already laid out to serve a row of single-car garages, which had been erected along its northern side, and were rented out to persons living in the neighborhood. On June 20, 1928, Chandler sold off the triangular plot to plaintiff. The hypotenuse or southern side of the triangle forms the rear line of four 15-feet wide properties fronting on Haverford Avenue, the eastern most of which is also owned and lived in by plaintiff. Because of the conformation of the ground, however, plaintiff's Haverford Avenue property, which is 8 or 10 feet above the level of the triangular plot, has no actual access to the triangle. None of the sides of this triangular plot abut upon any public street. The only place at which it touches a highway is where the extreme point of one of the acute angles of the right triangle touches Sixty-seventh Street at the southwest corner of the Ciccantelli's property. There being, for this reason, no means of physical access to the triangular plot, the deed in which it was conveyed to plaintiff by Chandler granted him an easement in a 10-by-30 foot section of the Ciccantelli driveway (then 20 feet wide) adjacent to the triangle and fronting on Sixty-seventh Street. This is the easement which is the subject of the present suit, and which plaintiff contends is made, by the language of the deed, exclusive in him. In that grant the driveway in question is referred to as being then owned by Chandler, and as being "as shown by a certain plan made" for Chandler "February 20, 1928, by George W. Hyde, surveyor regulator for the eleventh district, which is hereby incorporated in this deed with precisely

the same force and effect as though physically attached hereto". Why the driveway was thus specially referred to in the deed is not clear, unless it was to emphasize and preserve its previously established existence and character as a way for the common use and benefit of plaintiff, to whom he had already given a right of passage over the 10-by-30 foot section of it, already referred to, and also a row of garages which had been erected along its northern side, but which were not then in actual use. If that be so, it at least indicates the more or less contemporaneous construction of Chandler's understanding of what he intended to grant to plaintiff. However that may be, it was over the 10-by-30 foot portion of that driveway, at its southwest corner, that Chandler granted to plaintiff the easement in question in the following language:

"It is further understood and agreed between Paul V. Chandler and the grantee herein, that the said grantee shall have the right to use only the following described portion of said twenty feet wide driveway as and for a passageway and driveway at all times, namely, to wit: (Here follows a description in metes and bounds of the portion of the driveway covered by the easement.)

"It is further understood and agreed that the said grantee shall have no right to use any other portion of said twenty feet wide driveway, except that portion as above described, and that no other person except the grantee, his heirs and assigns, shall have the right to use the portion designated, and that the said grantee, his heirs and assigns, shall only have the right to use said driveway for uses pertinent to the property hereby granted by the within deed."

From the foregoing review of the material parts of the stipulation it is evident that, in order to afford plaintiff a means of access to the triangle, Chandler granted him a permanent easement for passage over a

driveway already laid out and existing on his own land. Did the language of that grant, which we have quoted at length above, create an exclusive easement for the benefit of the owner of the triangle, so as to deprive Chandler and his successors in title of the right to make any use whatever of the servient land, even though such use would not, in the light of the purpose for which the easement was created, substantially interfere with a full and fair enjoyment of it by plaintiff and his successors in title to the triangle? If it did not do so, the subsequent creation by Chandler or his successors of a similar right of passage in common with plaintiff over the same land for the benefit of his or their grantees is good. On the other hand, if it did create an exclusive easement, as plaintiff contends, defendants will be deprived of all practical access to the rears of their properties, since they would have the right to use only a narrow strip, 2½ feet wide and 30 feet deep, over the front half of the Ciccantelli driveway. This is the basic question in the case, and the answer to it is in a correct determination of the true intention of the parties as disclosed by a consideration of the language of the grant as a whole, the context in which the salient words are used, the purpose plainly intended to be subserved by the easement, and the circumstances attending its creation. An exclusive easement will not be presumed.

"A fee in land may be in one person and the exclusive right to use it as a right of way may be in another, but to accomplish that result the deed creating the right of way must specifically so covenant": Ulrich v. Grimes et ux., 94 Pa. Superior Ct. 313. This is the settled rule because, from its very nature, an exclusive easement deprives an owner of all beneficial use and enjoyment of his land; and, although it will be recognized, if the intention to create it is clearly declared, the law will do so reluctantly, and only in cases wholly free from dubiety.

"There can be no easement, no incorporeal right, binding the servient tenement, the effect of which is to deprive the owner of land of his right of use or possession": Clements v. Sannuti et ux., 356 Pa. 63.

"An owner of the fee of a servient tenement over which a right of way has been granted, unless he expressly agrees to the contrary, may make any use of his land which does not interefere substantially with the easement": Dyba et ux. v. Borowitz, 136 Pa. Superior Ct. 532.

Applying these general principles to the problem before us, the conclusion is inescapable that the language of the grant neither does, nor was intended by the parties to create an exclusive easement appurtenant to the triangular piece of land conveyed to plaintiff. Standing alone, and divorced from their context, the words, "no other person except the grantee, his heirs and assigns, shall have the right to use the portion designated", might appear to support the grant of an exclusive right although this is not necessarily so, since they would be equally apt to forestall an attempt by either grantor or grantee alone to enlarge the use of the bed of the easement by conferring the right upon others. These words are, therefore clearly ambiguous, and require us to turn to the rules for the interpretation of ambiguous language to which we have referred to above, and here the solution of the problem becomes manifest.

It is significant that in the first paragraph of the grant, in which the easement being created is directly defined, there is no suggestion that it is intended to be an exclusive easement. It is a mere grant to plaintiff of a "right to use only the following described portion (the 10 by 30 feet section) of said twenty feet wide driveway as and for a passageway and driveway at all times". Nothing in this definition of the easement suggests a grant of an exclusive right of use.

After this statement of what is intended to be granted, the grant goes on to describe the area covered by it in metes and bounds, and then proceeds, in a single paragraph, to enumerate the limitations intended to be placed upon the grant, which are, first, that plaintiff shall have no right to use any other portion of the driveway (thus referring to it as a single and existing whole), second, that no one but plaintiff and *his* (italic supplied) heirs and assigns shall have the right to use it, and third, that grantee (plaintiff) shall only have the right to it for "uses pertinent to the property hereby granted by the within deed". Thus we see that, in the middle of the section of the grant defining and limiting the rights of the grantee (plaintiff) in his use of the easement, the denial of the extension of the right to others is included. Read in this context, we think it becomes clear that the restriction upon the use of the easement is intended to be a limitation upon its use by others claiming a right by assignment from plaintiff, independent of a use incident to the land granted, rather than as a denial of grantor's right to make any use of the bed of the easement that will not substantially interfere with the limited easement granted.

A number of other considerations inherent in the situation support this conclusion. The triangle in question is so small that its use for any practical purpose is limited to the eastern half of its depth from Sixty-seventh Street, an area of approximately 660 square feet. The remaining area, which is rapidly diminished by its narrowing to an apex at Sixty-seventh Street, is insufficient, without the addition of the area covered by the easement in question, to afford access to the usable rear portion. This fact renders the triangle available only for such limited uses as the single-car garage which plaintiff subsequently erected on it. Such a garage could be readily and fully served by an easement in common with plaintiff and his grantors, so long as

the bed of the easement is not used as a parking place for the latter's vehicles. An exclusive easement was not necessary to assure to plaintiff a full and reasonable use of the land granted to him and intended to be served by the easement.

Again, the driveway was at the time an existing improvement on Chandler's land, which had served the garages erected on the land in the past, and had a present and prospective value for the use and development of the tract. It is not likely, therefore, that an owner would be willing to reduce the value of his driveway, and jeopardize the best use and development of his land as a whole by encumbering his land with a more burdensome easement than was necessary to furnish fair and reasonable access to the land he was selling.

And finally, the owners of the four properties abutting the triangle on its southern side, which fronted on Haverford Avenue, and three of which had no access from their rears to a public highway, could profitably erect garages on their own lands adjoining the triangle and purchase from its owner a license to use the triangle and the servient easement as a means of access to them. This would burden the driveway beyond the needs of the triangle itself, and enhance the value of those properties without corresponding compensation to Chandler; and we think it probable that the inherent and patent threat of such an eventuality was what primarily prompted the insertion in the grant of the language under consideration, as a means of forestalling such a use of the easement by plaintiff and his successors in the ownership of the triangle.

Each of these considerations points unmistakably to an easement in common, and the combined force of them all permits no other conclusion than that the parties never intended to create an exclusive easement in favor of plaintiff in the Ciccantelli driveway, that the conveyance of the triangle to plaintiff does not have

such an effect, that all of defendants have a right to use the driveway running across the southern side of the Ciccantelli property (No. 615 North Sixty-seventh Street) for the uses and purposes specified in their deeds in common with each other and with plaintiff. The bill should, therefore, be dismissed.

Accordingly, we now enter the following decree nisi in the case:

### Decree Nisi

And now, to wit, September 5, 1950, this case having come on to be heard upon bill, answer and stipulation, upon consideration thereof it is, ordered, adjudged and decreed:

1. The easement in a certain described portion of a driveway located on property No. 615 North Sixty-seventh Street, in the City of Philadelphia, now owned by Mario Ciccantelli and Anna, his wife, which easement was created by deed dated June 20, 1928, between Paul V. Chandler et ux. and plaintiff, Nicola Caramanico, in favor of plaintiff as owner of a triangular piece of land abutting upon the southern side of the premises, No. 615 North Sixty-seventh Street, is not an exclusive easement appurtenant to the triangular piece of land, but is an easement for use as a passageway, watercourse and driveway in common with all defendants, their heirs and assigns, as respective owners of the seven properties numbered 615 to 627 North Sixty-seventh Street, both inclusive.

2. The bill is dismissed.

3. Plaintiff shall pay the costs of this proceeding.

The prothonotary will enter this decree nisi, and give notice thereof to the parties or their counsel, and, unless exceptions thereto are filed within 10 days, either party may present to the court a form of final decree to be entered in the case.